UNITED STATES DISTRICT COURT
NORTHERN DISTRICT NEW YORK

| | |
|---|---|
| LISA BELL, HEATHER BARBAGALLO, KAILYN WAGNER and JAMES LOFTUS, Individually and on behalf of others similarly situated,<br><br>              Plaintiffs,<br><br>    - against -<br><br>JANJER ENTERPRISES, INC., and any related entities;<br><br>              Defendants. | ***COMPLAINT***<br><br>**JURY TRIAL DEMANDED**<br><br>**CASE NO:** 5:24-cv-150 (BKS/TWD)<br><br>**FLSA COLLECTIVE ACTION AND CLASS ACTION** |

Plaintiffs, by their attorneys Gattuso & Ciotoli, PLLC, allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. Janjer Enterprises, Inc. (hereinafter "Janjer" or "Defendant") owns and operates several International House of Pancakes ("IHOP") restaurants throughout New York State.

2. Defendant owns and operates several IHOP restaurants outside of New York State within the United States.

3. Upon information and belief, Defendant's IHOP restaurants make it one of the largest franchise operators of IHOP restaurants in the United States.

4. Named Plaintiff Lisa Bell is employed by Defendant at its Clay, New York location.

5. Named Plaintiff Heather Barbagallo is employed by Defendant at its Clay, New York location.

6. Named Plaintiff Kailyn Wagner was employed by Defendant at its Vestal, New York location.

7. Named Plaintiff James Loftus was employed by Defendant at its Vestal, New

York location.

8.      Defendant determines, manages, controls, and enforces all the terms and conditions of employment for all the Named Plaintiffs and similarly situated employees, making Defendant the ultimate employer of all the Named Plaintiffs and similarly situated class members.

9.      During all of Named Plaintiffs' employment with Defendant, Defendant intentionally, repeatedly, and as a matter of corporate custom, policy, practice and/or procedure, failed to adhere to numerous laws, codes, and regulations governing the payment of wages to Named Plaintiffs and those similarly situated, both under New York State law and under the federal Fair Labor Standards Act ("FLSA").

10.     Specifically, and as hereinafter alleged, Defendant failed to pay Named Plaintiffs and those similarly situated wages and monies due them under both State and Federal law as required by the Fair Labor Standards Act at 29 U.S.C. § 201, *et. seq.*, 29 CFR §§ 541 and 779, *et. seq.*, New York Labor Law Articles 6, 7, and 19, and 12 NYCRR §§ 137 and 142, *et seq.*

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 201-219 (FLSA); 28 U.S.C. § 1331 (Federal Question); 28 U.S.C. § 1337 (Acts of Congress regulating Commerce); and supplementary jurisdiction under 28 U.S.C. § 1367 (State Claims).

12.     The Court has personal jurisdiction over the Defendant pursuant to 28 U.S.C. § 1391(b) & (c).

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c).

## PARTIES TO THIS ACTION

### The Named and Class Plaintiffs

14.     At all times materially relevant to this complaint, Lisa Bell has resided in Onondaga County, New York within the Northern District of New York.

15.     At all times materially relevant to this complaint, Heather Barbagallo has resided in Onondaga County, New York within the Northern District of New York.

16.     At all times materially relevant to this complaint, Kailyn Wagner has resided in Broome County, New York within the Northern District of New York.

17.     At all times materially relevant to this complaint, James Loftus has resided in Broome County, New York within the Northern District of New York.

18.     Named Plaintiff Lisa Bell began working for Defendant in October 2019 at 628, South Main Street, North Syracuse, NY 13212. She has worked as a Server but has been made to also perform cleaning and sanitation duties, car side prep duties and car food runner duties while being paid the tipped hourly wage. She is presently still employed by Defendant.

19.     Named Plaintiff Heather Barbagallo began working for Defendant in September 2021 at 628, South Main Street, North Syracuse, NY 13212. She has worked as a Server but has been made to also perform cleaning and sanitation duties, car side prep duties and car food runner duties while being paid the tipped hourly wage. She is presently still employed by Defendant.

20.     Named Plaintiff Kailyn Wagner worked for Defendant from February 2020 through September 2023 at 3720 Vestal Parkway East, Vestal, NY 13580.  From February 2020 through April 2023, she worked as a server. Between September 2021 and April 2023, she also worked as a Crew Chief. From April 2023 through September 2023, she worked as an Assistant

Manager.

21.     Named Plaintiff James Loftus worked for Defendant from 2019 through September 2023 at 3720 Vestal Parkway East, Vestal, NY 13580. He was employed as a Cook the entire time.

22.     Plaintiffs' claims for relief are against Defendant for:

    a.  (First Claim) Failure to pay minimum of three hours or the number of hours in the regularly scheduled shift in violation of 12 NYCRR 146-1.5;

    b.  (Second Claim) Failure to pay the required Uniform Maintenance Pay to all employees in New York State required to wear a unform, in violation of 12 NYCRR 146-1.7

    c.  (Third Claim) Failure to provide required rest periods and to pay regular time and overtime for all time worked in violation of NYLL;

    d.  (Fourth Claim) Failure to pay regular time and overtime to the "hourly" employees for all time worked in violation of the FLSA;

    e.  (Fifth Claim) Failure to raise the hourly rate of pay from the "tip credit" minimum wage to the regular minimum wage when performing non-tipped duties in violation of the FLSA and NYLL; and

    f.  (Sixth Claim) Failure to Provide Pay Statements and Annual Wage Notices in violation of NYLL.

23.     "Class I" - The proper similarly situated class of individuals for the First, Second, Third, Fourth and Sixth Claims for Relief under the NYLL are all persons paid an hourly rate of pay who at times relevant hereto worked in Defendants' IHOP Restaurants in New York State.

24.     Upon information and belief, Class I persons consists of hundreds of employees, estimating 20 employees per store with an annualized turnover rate of 25%.

25.     "Class II" - The proper similarly situated class of individuals for the Fifth and Sixth Claims for Relief under the FLSA is all persons paid an hourly rate of pay who at times relevant hereto worked in Defendants' IHOP Restaurants outside New York State. Upon

information and belief, the Class II individuals asserting claims under the FLSA consists of hundreds of employees, estimating 20 employees per store with an annualized turnover rate of 25%.

26.     There are questions of law and fact common to each of the above-described classes that predominate over any questions affecting only individual members. Only the amount of individual damages sustained by each class member will vary.

27.     The claims of the Named Plaintiffs are typical of the claims of each of the above-described classes in that all of the members of each class have been similarly affected by the acts and practices of the Defendants.

28.     The Named Plaintiffs will fairly and adequately protect the interest of the members of each of the above-described classes, and their interests are not adverse to the interests of the other members of either class.

29.     While collective action for the Class II FLSA claims is appropriate under FLSA § 216(b), class action for Class I is equally appropriate and superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Federal Rule of Civil Procedure § 23 (b)(2) and/or (3).

**Janjer Enterprises, Inc.**

30.     Janjer Enterprises, Inc. was incorporated in the State of Maryland on February 4, 1981.

31.     Janjer Enterprises, Inc. became registered as a business as a foreign business corporation in New York State on January 25, 2018.

32.     Janjer Enterprises, Inc. maintains corporate offices located at 12150 Tech Road, Silver Spring, Maryland, 20904.

33.     Janjer Entrprises, Inc. is a private company.

34.     The Janjer Maryland Offices are primarily responsible for payroll, accounts payable and financial processes for Janjer's IHOP restaurants.

35.     Janjer operates several IHOP restaurants in New York State, including locations in Clay, Vestal, Watertown, Rochester, New Hartford, Clifton Park, Albany and Middletown.

36.     The IHOP restaurants owned and operated by Janjer vary somewhat in size and dimensions, but, on average, the typical restaurant has between 20 and 30 tables and can serve between 100 and 200 guests at one time.

## CLASS ALLEGATIONS

37.     Plaintiff realleges and incorporates by reference all the allegations set forth above.

38.     This action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and as a Class Action under Rule 23 of the Federal Rules of Civil Procedure.

39.     This action is brought on behalf of Named Plaintiffs and a class consisting of similarly situated hourly employees who worked for Defendant in both tipped Server positions and non-tipped positions,  and were paid hourly wages who had meal breaks wrongfully deducted from their wages, were required to work off the clock at times, were required to perform non-tipped duties while received the tipped hourly rate of pay, were not paid the minimum of four hours or the number of hours in the regularly scheduled shift in violation of 12 NYCRR 146-1.5, and were not paid the required Uniform Maintenance Pay to all employees in New York State required to wear a unform, in violation of 12 NYCRR 146-1.7  while working at Defendant's IHOP locations

40.     Named Plaintiff and potential Plaintiffs who elect to opt-in as part of the collective action are all victims of Defendant's common policy and/or plan to violate the FLSA and NYLL

by failing to pay Named Plaintiffs and those similarly situated, neither all their earned regular hourly wages nor the minimum wage for all hours worked and overtime hours at one and one-half times their regular hourly wages for all hours worked in excess of 40 in a week.

41.   The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be hundreds of employees.  Additionally, the names of all potential members of the putative class are not known.

42.   The questions of law and fact common to the putative class predominate over any questions affecting only individual members.  These questions of law and fact include but are not limited to: (1) whether Defendant failed to pay the appropriate regular or minimum wage for hours up to 40 in a week and overtime wages for all hours worked in excess of 40 in a week; (2) whether Defendant violated 12 NYCRR 146-1.5 and/or 12 NYCRR 146-1.7.

43.   The claims of the Named Plaintiffs are typical of the claims of the putative class members.  Named Plaintiffs and putative class members were all subject to Defendant's policies and willful practice of failing to pay regular and/or minimum wages and failure to pay overtime wages for all hours worked; as well as Defendant's failure to provide wage notices as required by NYLL.

44.   Named Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class.  Named Plaintiffs have retained counsel experienced in complex wage and hour collective and class-action litigation.

45.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The individual Named Plaintiff and putative class action members lack the financial resources to adequately prosecute separate lawsuits against Defendant. A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Defendant's policies.

## FACTUAL BASIS FOR CLAIMS

**Named Plaintiff Bell's Experience**

46.     Named Plaintiff Bell would regularly work as a Server at least 30 hours per week and very often in excess of 40 hours per week. For example, the week of 3/7/22-3/16/22 she worked 42.22 hours; 3/28/22-4/3/22 she worked 40.86 hours; 4/4/22-4/10/22 she worked 40.21 hours; 5/2/22-5/8/22 she worked 41.61 hours; 6/27/22-7/3/22 she worked 41.77 hours; 8/8/22-8/14/22 she worked 42.40 hours; 9/5/22-9/11/22 she worked 43.37 hours; 9/26/22-10/2/22 she worked 41.61 hours; 11/7/22-11/13/22 she worked 48.74 hours; 2/27/23-3/5/23 she worked 43.12 hours; 3/6/23-3/12/23 she worked 43.47 hours; 3/27/23-4/2/23 she worked 44.17 hours; and 5/15/23-5/21/23 she worked 42.71 hours.

47.     During her shifts, she would often be too busy to take a meal break and therefore she would not clock-out for a break. Despite this, a one-half hour deduction would be made in her time keeping records by Defendant through one of its managers or assistant managers.

48.     Named Plaintiff Bell witnessed this happening to her Server co-workers. In fact, Bell witnessed co-worker "Isabelle" show her time-keeping record and her pay statement to Scott Kirk, the Area Manager for the Clay location, and several other locations, as evidence that she had time wrongfully deducted from her pay statement and was not properly compensated. Scott Kirk did not dispute this, and in fact offered to pay "Isabelle" with cash from his own pocket to make up the difference.

49.     Named Plaintiff Bell's allegations are further supported by a conversation she had with co-worker "Brian," a Cook in Bell's location. During the conversation regarding meal breaks, "Brian" informed Bell that he personally sat next to managers and heard them discuss deducted meal breaks that were not taken and saw them enter the deductions. He informed Bell

that it had been happening for years.

50.     Named Plaintiff Bell also was required to wear a uniform that was a tee shirt with an IHOP logo prominently located on the shirt. Bell was required to purchase these uniforms from Defendant at a cost of $5.00 each. Despite this, Defendant failed to pay Bell and those similarly situated the required New York State Uniform Maintenance Pay pursuant to 12 NYCRR 146-1.7.

51.     Named Plaintiff Bell was a server and paid at the tip-credit minimum wage, below the regular minimum wage. However, Named Plaintiff Bell would regularly be asked to perform duties such as cleaning the kitchen, sweeping the floors, dusting the lights, cleaning bottles, and other duties that are not those of tipped positions and are paid at the regular minimum wage, or higher. Named Plaintiff Bell spent a substantial amount of her time performing these non-tipped server duties, especially when the restaurant was slow with seated customers. In fact, Named Plaintiff Bell would regularly perform two-hours of non-tipped duties after all the tables were cleared.

52.     Named Plaintiff was regularly scheduled to work a shift and informed she would be paid for a minimum of four hours. However, upon arriving and clocking in, Named Plaintiff Bell would often be asked to clock-out after a short time only be paid for that short time in violation of 12 NYCRR 146-1.5.

53.     Named Plaintiff Bell witnessed the Defendant's above labor practices being carried out against her coworkers in her North Syracuse, New York location. Upon information and belief, Named Plaintiff Bell believes the same or similar labor practices were carried out against those similarly situated hourly employees throughout Defendant's other locations.

**Named Plaintiff Heather Barbagallo's Experience:**

54.     Named Plaintiff Barbagallo would regularly work as a Server at least 30 hours per week and most often in excess of 40 hours per week. During her shifts, she would often be too busy to take a meal break and therefore she would not clock-out for a break. Despite this, a one-half hour deduction would be made in her time keeping records by Defendant through one of its managers or assistant managers.

55.     Named Plaintiff Barbagallo also was required to wear a uniform that was a tee shirt with an IHOP logo prominently located on the shirt. Bell was required to purchase these uniforms from Defendant at a cost of $5.00 each. Despite this, Defendant failed to pay Bell and those similarly situated the required New York State Uniform Maintenance Pay pursuant to 12 NYCRR 146-1.7.

56.     Named Plaintiff Barbagallo was a server and paid at the tip-credit minimum wage, below the regular minimum wage. However, Named Plaintiff Barbagallo would regularly be asked to perform duties such as cleaning the kitchen, sweeping the floors, dusting the lights, cleaning bottles, and other duties that are not those of tipped positions and are paid at the regular minimum wage, or higher. Named Plaintiff Barbagallo spent a substantial amount of her time performing these non-tipped server duties, especially when the restaurant was slow with seated customers. In fact, Named Plaintiff Barbagallo would regularly perform two-hours of non-tipped duties after all the tables were cleared.

57.     Named Plaintiff Barbagallo was regularly scheduled to work a shift and informed she would be paid for a minimum of four hours. However, upon arriving and clocking in, Named Plaintiff Barbagallo would often be asked to clock-out after a short time only be paid for that short time in violation of 12 NYCRR 146-1.5.

58.     Named Plaintiff Barbagallo witnessed the Defendant's above labor practices

being carried out against her coworkers in her North Syracuse, New York location. Upon information and belief, Named Plaintiff Barbagallo believes the same or similar labor practices were carried out against those similarly situated hourly employees throughout Defendant's other locations.

**Named Plaintiff Wagner's Experience**

59.     Named Plaintiff Wagner worked for Defendant in its Vestal, New York located between 2019 and September 2023.

60.     Named Plaintiff Wagner worked as a Server between February 2020 and April 2023. During this time, she regularly worked through her 30-minute meal breaks approximately two times per week because she was too busy serving customers to take a meal break.

61.     Despite not clocking out for a 30-minute meal break, Defendant, through a manager or assistant manager, would manually insert the break into Named Plaintiff Wagner's hours for the shift worked. This occurred throughout her entire time working as a Server under several different managers and assistant managers.

62.     Named Plaintiff Wagner worked as a Server for Defendant from February 2020 to April 2023 and was paid at the tip-credit minimum wage, below the regular minimum wage. However, she would regularly be asked to perform duties such as cleaning the kitchen, sweeping the floors, dusting the lights, cleaning bottles, and other duties that are not those of tipped positions and are paid at the regular minimum wage, or higher. Named Plaintiff Wagner spent a substantial amount of her time performing these non-tipped server duties, especially when the restaurant was slow with seated customers. She also often witnessed her Server coworkers doing the same.

63.     Named Plaintiff Wagner also was required to wear a uniform that was a tee shirt

with an IHOP logo prominently located on the shirt. Despite this, Defendant failed to pay Wagner and those similarly situated the required New York State Uniform Maintenance Pay.

64.     Named Plaintiff Wagner witnessed the Defendant's above labor practices being carried out against her coworkers in her Vestal, New York location. Upon information and belief, Named Plaintiff Wagner believes the same or similar labor practices were carried out against those similarly situated hourly employees throughout Defendant's other locations.

**Named Plaintiff Loftus' Experience**

65.     Named Plaintiff James Loftus worked as a Cook for Defendant from 2019 through September 2023 at 3720 Vestal Parkway East, Vestal, NY 13580.

66.     Named Plaintiff Loftus experienced shortages in his pay regularly beginning in April 2022 and continuing through September 2023. Loftus reported the shortages to Named Plaintiff Wagner who was an assistant manager at that time. Wagner reviewed and compared a POS system called Tray that recorded clock-in and clock-out times. She also reviewed a system called Rosnet that tracked labor, inventory, forecasting and other business measures. The time keeping information from Rosnet goes to a payroll system called Paycor that generates paychecks. Wagner compared Loftus' pay statements to the clock-in clock-out records in Tray and saw discrepancies, which were shortages of time in Loftus' paycheck, one particular week it was seven hours. Wagner then reviewed pay statements for other workers in the Vestal location and saw similar discrepancies resulting in shortages in employees' paychecks.  In fact, one worker named Jessica Ortiz complained to Wagner about shortages and when Wagner reviewed the Tray records and Jessica Ortiz' pay statements she saw that Jessica Ortiz was correct, she was shorted pay. Wagner reported the incorrect hours of pay to General Manager Heather Titus, who reported the issue to Camille Parker at Defendant's headquarters. Wagner's

authority to review all these systems was revoked after she reported the discrepancies. Upon this information and belief, the pay shortages experienced by Loftus and Ortiz in Vestal, New York were not limited to that particular location as the pay systems are from Defendant's headquarters and as such affected all hourly workers company-wide.

67.     Named Plaintiff Loftus also was required to wear a uniform that was a tee shirt with an IHOP logo prominently located on the shirt. Despite this, Defendant failed to pay Wagner and those similarly situated the required New York State Uniform Maintenance Pay.

68.     Named Plaintiff Loftus witnessed the Defendant's above labor practices being carried out against his coworkers in his Vestal, New York location. Upon information and belief, Named Plaintiff Loftus believes the same or similar labor practices were carried out against those similarly situated hourly employees throughout Defendant's other locations.

69.     Examples of the required uniforms, aprons and hats are as follows:









## FIRST CLAIM FOR RELIEF

### Failure to Pay Minimum of Three Hours or the Number of Hours
### in the Regularly Scheduled Shift in Violation of 12 NYCRR 146-1.5

70.     The Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

71.     Under NYLL, Named Plaintiffs and similarly situated hourly employees are entitled to be paid for a minimum of four hours or the number of hours in the regularly scheduled shift.

72.     Defendant has failed to pay Named Plaintiffs and similarly situated hourly employees the required three hour minimum or number of hours in the employee's regular shift in violation of 12 NYCRR § 146-1.5.

73.     Upon information and belief, Defendant willfully, purposefully, and maliciously failed to pay the required compensation as articulated in this claim for relief.

74.     Plaintiffs request all equitable and injunctive relief available under NYLL barring Defendant from continuing to withhold the minimum number of hours to be paid from Named Plaintiffs and/or all similarly situated employees, as well as the payment of all unpaid hours due under 12 NYCRR 146-1.5 and NYLL, and, where appropriate and permitted by law, liquidated damages, interest, and attorneys' fees in an amount to be determined by the Court.

## SECOND CLAIM FOR RELIEF

### Violation of 12 NYCRR § 146-1.7

75.     Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

76.     The tee shirts worn by Named Plaintiffs and those similarly situated constitute a "required uniform" under 12 NYCRR § 146-3.10.

77.     Defendant must provide employees with "uniform maintenance pay" in amounts pursuant to the schedule at 12 NYCRR § 146-1.7(a).

78.     Defendant is not entitled to the protection of the "wash and wear" exception at 12 NYCRR § 146-1.7(b).

79.     The tee shirts cannot be routinely washed and dried with other personal garments because of the stains and smells from restaurant work.

80.     Defendant is liable to Plaintiff and the Class for an amount to be determined at trial.

81.     Named Plaintiffs and those similarly situated seek payment of all unpaid uniform maintenance pay, liquidated damages, interest, and attorneys' fees in an amount to be determined by the Court.

82.     Defendant should also be enjoined from continuing this conduct in the future.

<u>**THIRD CLAIM FOR RELIEF**</u>

**Rest Time, Regular Time, and Overtime Under NYLL**

83.      The Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

84.     Under NYLL, Named Plaintiffs and similarly situated hourly employees are entitled to a half hour break when their scheduled shift exceeds six hours.

85.     Additionally, Named Plaintiffs and similarly situated employees are also entitled to be paid for all hours worked and at an overtime rate of one and one-half times the regular hourly rate when their total hours exceeded 40 hours per week.

86.     Even though Named Plaintiffs and similarly situated employees are entitled a half-hour rest breaks, and to be paid for all hours worked including overtime rates for hours

exceeding 40 per week, Defendant failed to provide said breaks or pay Named Plaintiffs and those similarly situated for all hours worked at the appropriate rate of pay as required under to NYLL §§ 190, *et seq*, 650, *et seq*, and, 19 NYCRR §§ 142, *et seq*.

87.     Upon information and belief, Defendant willfully, purposefully, and maliciously failed to pay the required compensation or provided the required rest periods as articulated in this claim for relief.

88.     Plaintiffs request all equitable and injunctive relief barring Defendant from continuing to refuse to provide Named Plaintiffs and/or similarly situated hourly employees with required rest breaks, from continuing to refuse to pay for all hours worked, and from continuing to refuse to pay the appropriate overtime rates for all time which exceeds 40 hours per week, all of which plaintiffs and those similarly situated are entitled to under NYLL, and, where appropriate and permitted by law, for the payment of all unpaid regular work hours, overtime work hours, liquidated damages, interest, and attorneys' fees in an amount to be determined by the Court.

### FOURTH CLAIM FOR RELIEF

### Unpaid Wages and Overtime Under FLSA

89.     The Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

90.     The Named Plaintiffs and similarly situated hourly employees of Defendant bring this claim for relief pursuant to the Fair Labor Standards Act ("FLSA") at 29 U.S.C. § 201, *et seq*.

91.     Under the FLSA, Named Plaintiffs and similarly situated hourly employees are entitled to be compensated for all hours worked, including those hours articulated in the above

Claims for Relief, where such time is compensable time and is also subject to the regular time and overtime provisions of sections 206 and 207 of the FLSA.

92.     Defendant willfully, knowingly, purposefully, and recklessly failed to pay Named Plaintiffs and similarly situated hourly employees for all time worked, including time which would have qualified as overtime.

93.     Upon information and belief, Named Plaintiffs and those similarly situated hourly employees frequently worked more hours than what they were paid for.

94.     On this claim for relief, the Named Plaintiffs on behalf of herself and other similarly situated hourly employees of Defendants seek the payment of all unpaid wages and unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiff and other similarly situated employees.

95.     The Named Plaintiff and others similarly situated also seek an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the FLSA.

## FIFTH CLAIM FOR RELIEF

**Failure to Raise the Hourly Rate of Pay From the "Tip Credit"
Minimum Wage to the Regular Minimum Wage When Performing
Non-Serving Duties in Violation of the FLSA and NYLL**

96.     The Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

97.     The Named Plaintiffs and similarly situated servers bring this Claim for Relief pursuant to the FLSA and NYLL.

98.     Under the FLSA and NYLL, the Named Plaintiffs and similarly situated servers are entitled to have their hourly rate of pay raised from the tipped credit minimum wage to the

appropriate regular minimum wage when clocked in as a server but spending a substantial portion of their time performing non-tipped duties.

99.     Defendant willfully, knowingly, purposefully, and recklessly failed to pay Named Plaintiff and similarly situated servers the appropriate regular minimum wage during shifts in which they spent a substantial portion of their time performing non-tipped duties.

100.    On this Claim for Relief, the Named Plaintiffs on behalf of themselves and other similarly situated servers of Defendant the payment of the difference between the tip credit hourly rate of pay and the appropriate regular minimum wage for all hours worked during shifts in which they spent a substantial portion of time performing non-tipped duties, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiffs and other similarly situated employees.

101.    The Named Plaintiffs and others similarly situated also seek an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the FLSA and/or NYLL.

## SIXTH CAUSE OF ACTION

### Failure to Provide Pay Statements and Annual Wage Notices Under NYLL

107.    Named Plaintiffs reallege and incorporate by reference all the allegations set forth above.

108.    Defendants have willfully failed to supply Named Plaintiffs and those similarly situated with wage notices, as required by NYLL § 195(1), in English or in the language identified as their primary language, containing Plaintiffs rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names use by

the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; plus, such other information as the commissioner deems material and necessary.

109.    Named Plaintiffs and those similarly situated did not receive all the required wage notices during their employment with Defendants.

110.    Defendants have willfully failed to supply Named Plaintiffs and those similarly situated with accurate pay statements, as required by NYLL § 195(3), listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

111.    Failing to inform Plaintiffs of their regular rate of pay, and recording less hours on their paystubs than Plaintiffs worked each week, was part of Defendants' scheme to deprive Plaintiffs of their regular and/or overtime pay.

112.    By routinely providing Plaintiffs with inaccurate and/or misleading information, or by failing to provide information, Defendants made it more difficult for Plaintiffs to determine whether and to what extent they were underpaid each week, thus impinging on their rights and their ability to advocate for proper pay.

113.    Through their knowing or intentional failure to provide Named Plaintiffs and those similarly situated with the wage notices and statements required by the NYLL, Defendants have willfully violated NYLL §§ 190 et. seq., and the supporting New York State Department of Labor Regulations.

114.    According to NYLL § 198-1(b), Named Plaintiffs and those similarly situated are entitled to $50 for every day in which they did not receive a wage notice, or a total of $5000,

together with costs and reasonable attorney's fees.

115.    According to NYLL § 198-1(b), Named Plaintiffs and those similarly situated are entitled to $250 for every day in which they did not receive a pay statement, or a total of $5000, together with costs and reasonable attorney's fees.

116.    By the foregoing reasons, Defendants have violated NYLL §§ 195(1) and 198-1(b) and are liable to the Named Plaintiffs and those similarly situated in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

## DEMAND FOR TRIAL BY JURY

117.    Pursuant to Federal Rule of Civil Procedure 38, plaintiffs respectfully request a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested that this Court assume jurisdiction herein and thereafter Named Plaintiff demands a trial by jury and judgment against Defendants on behalf of themselves and those similarly situated as follows:

a.    On the First Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to pay a minimum of four hours or the number of hours in the regularly scheduled shift in violation of 12 NYCRR 146-1.5, as well as liquidated damages, and attorneys' fees in an amount to be determined by the Court;

b.    On the Second Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to pay the uniform maintenance pay in violation of 12 NYCRR 142-1.7, as well as liquidated damages, and attorneys' fees in an amount to be determined by the Court;

c.    On the Third Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to provide required rest periods and to pay regular time and overtime for all time worked in violation of NYLL, as well as liquidated damages, and attorneys' fees in an amount to be determined by the Court;

d. On the Fourth Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to pay regular time and overtime to the hourly employees for all time worked in violation of the FLSA as well as the payment of all unpaid hours, liquidated damages, and attorneys' fees in an amount to be determined by the Court;

e. On the Fifth Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to raise the hourly rate of pay from the "tip credit" minimum wage to the appropriate regular minimum wage when performing non-serving duties in violation of the FLSA and NYLL, as well as liquidated damages, and attorneys' fees in an amount to be determined by the Court; and

f. On the Sixth Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to provide pay statements and annual wage notices in violation of NYLL, as well as liquidated damages, and attorneys' fees in an amount to be determined by the Court.

Dated:  January 31, 2024

VIRGINIA & AMBINDER, LLP

By:    */s/ James Emmet Murphy*
James Emmet Murphy, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
jmurphy@vandallp.com
Tel:   (212) 943-9080
Fax:   (212) 943-9082

And

By:    */s/ Frank S. Gattuso*
GATTUSO & CIOTOLI, PLLC
Frank S. Gattuso, Esq.
The White House
7030 E. Genesee Street
Fayetteville, New York
315-314-8000
fgattuso@gclawoffice.com

*Attorneys for the Plaintiff and putative class*